# N. Y. SUPERIOR COURT.

IsAAc Kip, Jr., plaintiff and appellant agt. Reuben W. Howes and Charles A. Macy, defendants and respondents.

Where a party acts on the statement of an *agent*, that he was authorized to make an offer for his principal, which he, the agent, had no authority to make, and which the principal had not by any act of his induced the party to believe that the agent had authority to make—the party relying on such untruthful statement, must look to the agent only, for indemnity against loss arising therefrom.

The facts and circumstances in this case—a transaction in obtaining and paying a loan of money, by, and the delivery of securities to the agent, *held* to be within the principles of the above proposition. (*A pretty close case it would seem, as to the sufficiency of notice of the revocation of the agency, in reference to which, judges might perhaps, honestly differ in opinion*).

*Argued, January, General Term,* 1869.

*Before* Monell Jones *and* Fithian, J. J.

*Decided, December General Term,* 1869.

Appeal from a judgment entered on the report of a referee.

The firm of Morse & Co., (composed of Anthony W. Morse and J. Cady Brown,) employed Charles E. Anderson, an exchange and general commission broker, to procure for them a loan on certain securities, and furnished him with the securities for that purpose ; under this authority, Anderson procured a loan from defendants, for said Morse & Co., and pledged to defendants as security for such loan, the securities with which Morse & Co., had furnished him. At the maturity of the loan, Anderson paid the defendants the amount of the loan, with the interest thereon, and took up the securities which had been pledged therefor. In this transaction of Anderson, Morse & Co., acquiesced.

Afterwards said Morse & Co., again employed Anderson

to procure for them a loan of $30,000, on certain securities, and furnished him with the securities for that purpose. Under this authority, Anderson procured the loan of $30,000 from defendants for Morse & Co., and pledged to the defendants as security for such loan, the securities which Morse & Co., had furnished him. At the maturity of this loan of $30,000, Morse & Co., furnished Anderson with the means to pay the same, and directed him to go to defendants, pay the loan and take up the securities which had been pledged therefor. Accordingly, Anderson went to defendants, tendered them the amount of the loan, and interest thereon, and requested them to deliver the securities to him. Defendants refused to accept the tender or to deliver the securities, claiming that they had a further lien on the securities for about $2,700 for a balance on a stock transaction. Anderson thereupon, on the same day returned to Morse & Co., and returned to them the means with which they had furnished him to pay said loan, stating to them the demand of defendants, for the payment of the balance on the stock transaction, to which demand Morse & Co., declined to accede.

After this, Anderson being in the office of defendants on several occasions, defendants had conversations with him about the settlement of the loan.

Thereafter, one of the defendants, met Anthony W. Morse in the street, and told him that defendants wanted the loan settled and paid, that Anderson had been to see them several times about it; but no settlement had yet been made, and defendants wished it closed, to which Morse replied, that he would see to it and have it settled.

About fifteen days after this conversation, defendants sent for Anderson to come and see them, he came and said "he would get an offer from Morse & Co., in final settlement." Mr. Howes, one of the defendants said, "very well let us hear it." Anderson then left defendant's office, and afterwards returned and made an offer which he said he had got.

This offer was declined. Anderson again left, and returned with an offer of $32,000, which he said was the best offer he could get from Morse & Co. This offer was accepted. The defendants then sent with Anderson a clerk with the securities. The clerk and Anderson went to the Phœnix Bank, where said Anderson pledged the securities to that bank, for a loan of over $32,000, made by it to him.

Anderson, of the money thus loaned to him by the Phœnix Bank, paid to the defendants $32,000, for the loan of $30,000 made by them to Morse & Co., the interest thereon and about $1,500 on the stock transaction.

Anderson never went to see or had any communication with Morse & Co., or any member of the firm after the occasion before mentioned, in which he returned to them the means which they had provided him with to pay said loan of $30,000, and take up the securities.

Neither Morse & Co., nor the plaintiff, their assignee, have ever received back the securities so pledged by them to defendants as security for said loan of $30,000. On the 19th day of April, 1864, Morse & Co., assigned to the plaintiff, the said securities so pledged to defendants, in consideration that the plaintiff should pay the loan and interest.

After the assignment, the plaintiff tendered the defendants the amount of the loan of $30,000 and interest, and demanded the securities with which demand defendants refused to comply.

This action is brought to recover damages for the conversion by defendants of the securities.

The referee before whom the action was tried, reports that the delivery of the securities to Anderson, discharged the defendants from the liability, or accountability to Morse & Co., or to plaintiffs for the same, or any part thereof; and further reported the defendants were entitled to judgment, that the complaint be dismissed with costs.

On this report judgment was entered, that the complaint

be dismissed on the merits of the action, and that defendants recover of plaintiffs $1151 14–100, for their costs in this action.

From this judgment, plaintiff appeals to the general term.

On the argument it was conceded, that defendants had no lien on the securities for the alleged balance due on the stock transaction.

HOOPER C. VAN VORST, *of counsel for appellant.*
BUCKHAM & SMALES, *attorneys for appellant.*
FRANCIS C. BARLOW, *of counsel for respondents.*
BARLOW & HYATT, *attorneys for respondents.*

*By the court,* JONES, J.—I think the evidence amply sufficient to prove an authority in Anderson, as to the defendants to repay to them the loans obtained from them, and to take up the securities pledged by him therefor. Such authority would continue as to the defendants until they were apprised of its termination, a notice to them of the revocation of the authority would terminate it as to them ; but it may be terminated as to them in other ways, such as a knowledge of circumstances inconsistent with its continuance.

In this case Anderson as he had before done, went to the defendants with funds to re-pay the loan of $30,000, and take up the securities; he tendered the amount due on the loan, and demanded the securities; but defendants refused to receive the amount, and deliver up the securities on the ground that they had a demand against Morse & Co., arising out of a stock transaction, which they claimed was a lien on the securities, and should be paid before they surrendered the securities.

Now it is clear that Morse & Co., had given Anderson no power either to adjust any such claim, or pay the same as a condition of receiving back the securities, nor had they

done anything, which could lead defendants to believe that Anderson was invested with such a power. Hence, we find that Anderson did not at that time enter into negotiation concerning this additional claim, or make any offer concerning it; but on the refusal of defendants to accept the amount due on the loan and redeliver the securities, left their office with the amount in his possession leaving the securities in defendants possession.

The attitude of the defendants then, was that of retaining the securities under a claim, to hold for a demand which Anderson had no authority to allow or settle, and this was known to them.

That claim could only he settled by the principals.

Their decision on this claim, placed the matter in a position in which the agent could no longer act under his anthority, and was a circumstance inconsistent with the continuance of an authority which by reason thereof, was wholly inadequate to deal with the altered condition of matters, and the continuance whereof would consequently be wholly aimless and purposeless.

All this was known to defendants, but as the termination of the authority, by reason of such a circumstance, depends on the presumption founded on knowledge of the human character, and of the motives, passions and feelings by which the mind is usually influenced, which knowledge every man is presumed to have acquired from experience, (1 *Stark Ev.* p., 48, 50,) that a principal will not continue an authority which is inapplicable and of no use under the circumstances which have arisen since it was conferred, it follows that a party may, even though he is aware of circumstances which when they come to the knowledge of the principal, would opperate to determine the authority of the agent, assume that the agency continues until the lapse of a reasonable time for the communication of the circumstances to the principal, since, until such communication, there can be no presumption of a withdrawal

of the original authority. Indeed, the authority would continue until actual notice to the principal; but if the third party suffers a reasonable time for the communication to be made to elapse, and thereafter acts on the assumption, that the authority still exists, he does so at the peril of its being shown that the principal had notice before he acted; for he is bound to recognize the presumption, that in the ordinary course of business matters, and of the general affairs of men, communication of the facts will be made to the principal within a reasonable time, what that reasonable time will be, will depend of course, on the circumstances of each case.

In the present case, all the parties did business in the lower part of the city, a reasonable time to allow for the communication to Morse & Co., of the defendant's decision on the further claim, could not exceed the day after the transaction. In fact, Morse & Co., had notice of such decision immediately.

It follows that, at the time of negotiation and settlement hereafter mentioned, the authority of Anderson to receive the securities on the payment of the loans was terminated as to the defendants.

As however, an authority terminated by actual notice, may be renewed by subsequent acts of the principal, so may one terminated by the happening of circumstances inconsistent with its continuance.

The only act of Morse & Co., which can possibly have such an effect is, the conversation found by the referee to have been had between Anthony W. Morse and Mr. Howes, which was as follows: " I, (Howes,) met Mr. Anthony W. Morse, in William street, in New York, and stated to him, that Anderson had been to see us (the defendants,) several times in reference to the loan of $30,000, but no settlement had been made, and we wanted it closed up. Mr. Morse answered that he would see to it, or words to that effect."

This conversation clearly conferred no actual authority on Anderson, to receive the securities.

The question then is, was it calculated to induce in the mind of Mr. Howes, the belief that Anderson was authorized to adjust the dispute about that loan, and to receive the securities, and did the defendants act on the belief thus indicated?

Anderson had been the broker through whom the loan was procured from defendants.

It was natural that defendants should apply to him, to endeavor to procure a settlement, and it would be equally natural that he should feel some interest in having it settled.

The conversation in question taking place under these circumstances is, in my view insufficient to induce a belief that Anderson was authorized to make a settlement and receive the securities.

Howes mentions a fact, which under the circumstances was well attributable to causes other than an assumption on the part of Anderson, to act as agent for Morse & Co.

Morse does so attribute it, and in his answer says, not "I will see him," but "I will see to it." Thereby intimating that he himself, and not Anderson would attend to the settlement of the matters.

This view is strengthened by what subsequently took place. After the conversation, Anderson did not of his own accord go to the defendants to make a settlement, but defendants sent for him, when he came he said he would get an offer from Morse & Co., for a final settlement.

This clearly shows that Anderson did not himself consider, that he had any power under any previous authority to act further in the matter without instructions from Morse & Co., and plainly indicated to defendants that he had no such power. He does not come himself to propose a settlement, which might be a holding out by him, that he came at the direction of Morse & Co., but he comes at the

request of the defendants, and he in effect clearly says : I have no power, but will go to Morse & Co., and see if I can get power.

Now if defendants had derived the impression from the conversation, that Anderson was empowered to make a settlement, this statement of Andersons would naturally create surprise, and call forth an allusion to the conversation. If defendants did get an impression from the conversation, that Anderson was empowered to act, it seems to me it must have been a very weak one, and must have been entirely dissipated by the action of Anderson when they sent for him.

These views lead to the conclusion that defendants acted on the statement of Anderson, that he was authorized to make an offer which he had no authority to make, and which Morse & Co., had not by any act of theirs induced defendants to believe that he had authority to make.

Having relied on such untruthful statement, they can look to Anderson only, for indemnity against loss arising therefrom.

Judgment reversed, new trial ordered, and order of reference vacated with costs of appeal to the appellant, to abide the event.

FITHIAN, J., concurred.